In the next case is Cady v. Ride-Away Handicap Equipment Corporation. Mr. Chalker. Yes, Your Honor. Nice to have you here. Thank you, Your Honor. Good to be here. Good morning. May it please the Court. My name is Matthew Chalker, and I'm here on behalf of the plaintiff appellant, John Cady. I'd like to reserve three minutes for rebuttal. We're here today on two errors made by the District Court. The first was the trial court's grant of summary judgment in favor of the defendants on four defenses, namely contributory negligence, assumption of the risk, product misuse, and failure to heed a warning. And the second was the court's ruling to strike the opinions of the plaintiff's mechanical engineering expert, Mark Ezra. That was an abuse of discretion. I'd like to address both, but I will turn first to the issue of summary judgment. The law requires that in order to establish these four defenses, the defendants were required to prove causation. Absent that proof, which is essential, summary judgment on those four defenses is not appropriate. If that requirement is overlooked by the trial court in the absence of that proof, and summary judgment is nevertheless granted, error has been committed. That's precisely what happened here. The defendants submitted four arguments or four defenses to the court absent proving causation, and the court's ruling in their favor was reversible error. Speaking loudest to the defendants' lack of proof of causation is actually their own most qualified expert, James Peters. He was a mechanical engineer. And Mr. Peters was asked in deposition. Now, he was accepted as an expert. He was, Your Honor. That's correct. And you admit he's the most qualified? Of the defendants' experts, he's the most qualified. Not the most qualified expert in the case. The most qualified expert. Of the one who's been considered. Yes, Your Honor. He was asked squarely in deposition, Mr. Peters, what caused this crash? And please allow me to quote. He said, I don't have a specific cause. No, I don't have a reason. I don't have a cause, as I've mentioned several times already. So if defendants' own expert wasn't able to draw a conclusion about the cause of the crash, then certainly the trial court's conclusion on that point, particularly in the face of plaintiff's opinion on causation, was a ruling that amounted to resolving a material fact, a genuine dispute. That's not appropriate on summary judgment. That is a determination left to the province of the finder of fact. Is there a different test with respect to these four defenses as to causation in terms of the evidence required? Well, the elements necessary to prove, I'm sorry, the standard necessary to prove each of the four defenses is slightly different, but the common thread of causation runs through all of them. The nexus between a particular act or omission must be drawn to the ultimate injury, in this case the crash of the van. And I think laying out each of the, I'll call them standards, for the four defenses will highlight that point. So if you take convictory negligence, for example, the defendants were required to prove both a negligent act as well as the independent element of causation. Mr. Peter's clear testimony notwithstanding, I don't know what caused the crash, the trial judge nevertheless said, well, I'm going to find contributory negligence. He did so on the following grounds. The fact that a safety pin was removed, it was out of where it should be, based on the fact that Mr. Cady drove without certain training, and the fact that Mr. Cady drove the van in mixed mode. So the purpose of these students here, we're talking about a van that was equipped to be driven by someone's handicap. Correct, Your Honor. And it has a special apparatus on it. Yeah, a joystick and many wheels that allowed a quadriplegic individual. And we're talking about the, not talking about the handicapped person, we're talking about the father of the handicapped person who got in and tried to drive it. Yes, Your Honor. And he ran into a tree and it hurt him real bad. That is true. And the district court says that's contributory negligence and the assumption of risk and these other things that you're going to talk about, and therefore he can't win. Yes, Your Honor. Go ahead. So those three issues that I mentioned, these were all addressed during the course of discovery in this case, turning back to Mr. Peters again, defendant's mechanical engineering expert. He was specifically asked in deposition, sir, do you believe that the pin being out caused the crash? He said, no, I can't render that opinion. I don't know. As it relates to the failure to achieve certain training or driving in the mixed mode, defendants have offered at most the negligent act. It's still required, or they are still required to take the step further and demonstrate the element of causation. There has to be that causal link. What do you mean by negligent act? So a negligent act is broken up in the law distinct from the causation element would be, I think. You mean a negligent act other than the contributory negligent act of your client? Well, an act that sets into motion the chain of causation that leads to the damage. You really mean an unreasonable act under the circumstances? Under the circumstances, yes, Your Honor. In this case, the training, lack of training in the mixed mode was the alleged unreasonable act, but that causative link still has to be drawn. Why did the van crash? Did he brake incorrectly? Did he steer incorrectly? Did he push some button wrong? That link has never been drawn by the defendants in this case. On the other hand, plaintiff's expert, Mr. Ezra, drew a very clear link. Mr. Ezra said, I reviewed all of the materials in this case, and my conclusion based on that review is that here's what happened. This roller that's supposed to apply pressure on the brake pedal to stop the vehicle shifted out of place because of normal flex of a vehicle to underneath the pedal so that when Mr. Cady tried to brake, he couldn't. That's what caused him to hit the tree. Confronted with this very genuine dispute of material fact, the trial court granting this judgment on contributory negligence was error. The same analysis applies to the other three defenses, so taking assumption of the risk. Defendants were required to establish that plaintiff, the risk plaintiff assumed was the risk that caused the injury. You seem to describe the risk rather narrowly as he only assumed the risk apparently of driving without a safety pin installed, which the manual indicated could lead to another lever becoming disengaged causing the driver to lose control of the vehicle as a result of using the steering controls. Whereas your opponents say it really isn't that narrow. He assumed the broader risk of an accident happening when he chose to drive the vehicle away with the pin uninstalled and without proper training. That's why I asked you earlier on about this issue of causation with respect to assumption of risk. Don't the Maryland cases make a distinction between those two defenses? Some cases suggest that even when the ultimate cause isn't shown, the fact that the individual assumed this broader risk is enough to warrant application of the defense. In all candor, Your Honor, I'm not sure I completely agree. The Maryland courts do recognize them as different defenses, but as it relates to assumption of the risk, and I can give the site of American Powerlifting Association v. Cotillo, the court very clearly held that a trial court must look to the immediate cause, and they use that in quotes, immediate cause of the injury. Here, defendants don't have an immediate cause. They have a could. Well, driving with the mixed mode or driving without training or driving with the pin out could have caused it, but that's a really big could. What else could have caused the crash? That's the inherent missing link in defendant's case, and that's where the trial judge erred in ruling that there was assumption of the risk because the plaintiffs, excuse me, the defendants cannot establish that the risk encountered was, I'm sorry, the risk assumed was the risk that caused the injury, and I think that logic carries through on product misuse and failure to heed. I think it's a little bit more persuasive to me if the accident in this case had been caused by somebody else coming across your client as he was driving the car and T-boning him. He clearly could not have assumed the risk of an intervening force, but isn't it logical to assume that he assumed the risk of his inability to control the vehicle in this case, having decided to sort of take this van on a drive in a manner that was not authorized by the manufacturer? Well, Your Honor, I think the answer is maybe it's not that clear because their own expert, Mr. Peters, couldn't give an answer. Mr. Peters, what caused the crash? I don't know. And so there we have that genuine dispute. It's not only a genuine dispute. In the summary judgment order, what did the judge decide caused the crash? Your Honor, the judge decided the cause of the crash was the pin being removed, which was entirely unsupported. Was the pin being removed? Number one. Number two, the failure to drive with required training. And number three, the driving in the mixed mode. But, again, Mr. Peters had before him all those possibilities. I mean, he was defendant's expert. And he said, I don't know what caused the crash. Now, is there anything written other than what this transcript is and what the judge said in the bench? Your Honor, there's a brief order that simply goes through each of the motions filed, either granting or denying. So as far as the substance of the courts. There's nothing in that order. I have that here, too. Yes, Your Honor. So you gave three reasons or three causes you say the judge found. Well, the last cause actually applies to the fourth defense, which is failure to heed a warning. Again, that causation issue rings true then. But you say those are in this transcript somewhere. They are, Your Honor. And I can actually cite to the court. It is the record at 2-5-4-3 to 2-5. 2-5-4-3. Oh, I'm sorry, Your Honor. Let me. You're going to have to get a little more specific. The ruling on assumption of the risk is at 2537 through 38. 2537 to 38. The ruling on. . . Have you got specific lines? Yes, I do, Your Honor. The court says regarding assumption of the risk. . . Which page are you on? I am at 2537. All right. The way this vehicle was being operated was not in the proper mode. Then he skips. . . What line is that? Your Honor, I don't have a line citation. My apologies. The transcript's got volume. Go ahead.  My apologies. If you come down several lines, he goes back to the three points that I raised. One, two, three. . . Well, I don't have the lines in front of me. The court states he knew the vehicle was malfunctioning. He wasn't able to convert it back to able-bodied mode. He couldn't put the pin back in. It wasn't working properly, and I conclude that this was a known risk, that he assumed the risk of it. That reasoning holds truth for contributory negligence as well. But I just wanted to make sure the court was clear that there was one additional reason. That was the failure to heed the warning. But it's plaintiff's contention. The line to include part is on the top of page 38, 2538. Yes, Your Honor. The second and third line. I see that. All right. So that reasoning held true for contributory negligence, assumption of the risk, and product misuse. The fourth issue was the fourth defense, and that was the failure to heed the warning. But, again, that threat of causation runs through as well. I'm a little bit confused. Yes, Your Honor. Because you haven't addressed the exclusion of your expert. Thank you, Your Honor. Why do we even care about the rest of that stuff if your expert is not in the case? I think that's fair. Don't you absolutely flat out lose? That's correct. Then why do we jump over that? So you admit that you lose unless we reverse him on the expert exclusion. Yes, there would be no expert testimony to offer a causal effect. You've got to have that back. Yes, Your Honor. That's your first thing to argue. So the issue there, though, I think is a little bit straighter forward. It's an abuse of discretion. First and foremost, I think it's important to establish that the trial court didn't strike him on the basis of lack of qualifications. Defendants have submitted to this court otherwise, but that's just simply not true. That's not. That's clear. So we're left with the two-pronged test to determine whether the testimony comes in. Was his testimony based on reliable foundation, number one? And, number two, was it relevant to the facts at issue? Both of those questions vary. Well, that's somewhat of a, I don't want to say corrupt, but that's not exactly a pristine explication of Rule 702. I will grant the court that, but I think here is the important aspect of this testimony. Mr. Ezra relied on the same data set as Mr. Peters. Mr. Peters was permitted to testify. Mr. Ezra relied on more. So how does that help you if the district court's error was the district court and they should have excluded all the expert evidence? How does that help a plaintiff? I don't think it does, but here's the difference, Your Honor. I'll make the argument. But here's the difference. Because what the trial court did, and this is borne out in the record, and I'll reference the bottom of page, I believe, 2543 in the record. The trial court ultimately struck Mr. Ezra because he simply disagreed with Mr. Ezra's opinions. It was, I don't think you're right. I don't want to accept it, so I'll strike you. It wasn't on his foundation. It wasn't on his qualifications. What the trial judge said was, and I'm quoting here, he doesn't have any knowledge about training, and he said it has no relevance, yet that's inconsistent with the conclusions I've reached. So the trial judge has made a clear finding on the record that I'm going to make decisions, and if they are contrary to what the expert has offered, I'm just going to reject them and strike him. And the problem is, though, as Judge Davis pointed out, maybe my explanation of 702 was a little simplistic. The bottom line is a disagreement with an expert cannot be a basis to strike an expert on motion for summary judgment before trial. He didn't say that. Well. You're saying that. He did not use those specific words, but I think when you look at the language he used, he said his opinion is inconsistent with the conclusions I've reached. The experts are in the case to bring their conclusions to the finder of fact's attention, and so therefore the finder of fact has the ability to say, well, you know what, that's not what I, I don't find that credible. That's not what I agree with. Here, the trial judge took away that ability of the finder of fact to weigh the credibility of the varying experts. Perhaps they would have found Mr. Ezra not credible. Perhaps they would have found him to be very credible. Either way, the trial judge, and I'll submit, Judge King, that the specific language of I disagree with your opinion wasn't used. But when you look at the totality of the opinion, that's what happened. It wasn't because his opinions were untestable. They were. It wasn't because. Could you say that applies to all three of their experts, your proposition there? I don't. He disagreed with your experts, so he struck it, and he agreed with their experts, so he admitted a myth. Most precisely, Your Honor. Is that what you're trying to say? Absolutely. Yes, Your Honor. We need to read between the lines and figure that out. Well, I think it's a little more than reading between the lines, but I will submit he did not use the specific language, but I do believe specific language is there. Of the four experts, you claim yours is the best qualified. Of the four, certainly more qualified than Mr. Nunza and Mr. Clendenin, and I believe it would be for a jury to make the decision as to whether he was or was not more qualified than Mr. Peters, but that's what's in the province of the jury. What did you find that even if the judge perhaps used the wrong language in arriving at the conclusion, he arrived at the correct conclusion because notwithstanding your experts' qualifications, his conclusions were speculative, in particular the conclusion about the normal twisting of the vehicle frame that he claimed was caused by everyday driving, which in turn led, he claimed, to a misalignment of the brake roller with the brake pedal. What's the evidence? I mean, what's the foundation for that conclusion? The evidence is evidently accepted within mechanical engineering because on the record at 1664, Mr. Peters says flex could cause disengagement of the roller arm. He agrees with that. Well, a lot of things could happen for a lot of reasons, but it's not enough to say that that's, you've got to have some factual support for that particular conclusion. Well, the factual support was the fact that Mr. Ezra reviewed the data. He agreed with Mr. Peters on that. He inspected the van. He looked at the passenger compartment. He made measurements of the van, and the decision that he ultimately made, based upon his knowledge training experience, was this is what left the crash to occur. And I'd submit that as a society and in the legal field, we permit doctors routinely to draw diagnoses of exclusion. For the purposes of treatment. Not for the purpose of figuring out what happened at some point in time, some time ago. To a reasonable degree of engineering probability, based on the review of the exact same materials that Mr. Peters reviewed, Mr. Ezra came to the conclusion that the roller's migration was the cause. And at the end, when it was all said and done, at best, it was a dispute of fact for a jury to determine. And it all should have been viewed in the light most favorable to the plaintiff. Because ultimately, on summary judgment, the plaintiff doesn't have a burden to establish that. You didn't mean to suggest that in conducting its reliability analysis, the district court must draw inferences in favor of the plaintiff. No, I'm sorry. I did not mean that. What I meant to say was these issues are really very intertwined, as the court has pointed out. And so what you're left with is a credibility determination that's not appropriate. We know the materials he reviewed were acceptable. They were never challenged. We know what materials and investigations he did. We know why he came to conclusions. Well, the van was accelerating, but the plaintiff was braking. I think that is a big point. What we don't have is, if I read the district court correctly, is really a cogent explanation from Ezra as to why he disregarded so many other possibilities. That's a serious flaw in a 702 expert. Respectfully, Your Honor, I don't agree. Okay, that's fair. If we look at the record at 627 to 29, Mr. Ezra's put to that very question, sir, you didn't consider anything else? He says, well, yeah, I actually did. I looked at the data. I saw what it appeared to be from 50 seconds on to the crash. I believe it was 74. I particularly looked at what it was in the 10 seconds prior to the crash. And what he says, I then took into consideration human error. What controls were being called for? What actions were being taken? The data logger shows all this. And so when he evaluated and was left with the conclusion that the brake was being called for, the vehicle was accelerating, it led him to the conclusion, to a reasonable degree of engineering probability, that the migration is what ultimately occurred or caused it. So disagreeing with Your Honor, he did consider it and he did make clear that he considered it. That red light's on, as you know. And for the benefit of the young people from William & Mary, when that red light's on, that's when it's just like driving a car. You're supposed to stop. And I'm not very good at getting them stopped. So they just run over me. And I try to be fair to both sides in that regard. Ms. Dostey, did I pronounce that correctly? You did, Your Honor. Good afternoon. Good to have you here. Thank you very much. Thank you. May it please the Court, my name is Samia Dostey and I represent Electronic Mobility Controls, the manufacturer of the handicap control system that was installed on the subject van. We're here to respectfully request that this Court affirm the decision of the District Court because it appropriately precluded Mr. Ezra from testifying in this case due to the lack of reliability in his opinions. And further, the Court correctly granted summary judgment because the evidence was undisputed that Mr. Cady was contributory negligent, assumed the risk of his injuries, and misused the product at issue. As a preliminary matter, we would submit that Mr. Cady has waived any appellate argument as to the criticisms Mr. Ezra made as to Electronic Mobility Controls. And what I mean by that is Mr. Ezra had a single criticism against the manufacturer of the driving system, and that was that one page of its installation instructions that was provided to right-of-way was unclear. As it turns out, the clarity was found on the page before that. Putting aside the merit of his criticism, that issue was not addressed at all by Mr. Cady in any of his appellate papers. And as such, we would submit that the admissibility of Mr. Ezra's opinions as to Electronic Mobility Controls has, in fact, been waived. Alternatively, if the court does not accept that it was waived, we would submit that the district court appropriately exercised its discretion in carrying out its gatekeeping function in precluding Mr. Ezra's opinions where they very clearly... Mr. Ezra is the expert for the other side that the district court, district judge excluded. And you agree with that part? Yes, Your Honor, that is correct. Part of it has been waived, that's what you were talking about there. Yes, Your Honor. If it comes in, if we were to decide that he was erroneously excluded, do you agree that they got enough to get past summary judgment? Your Honor, probably there would be a dispute of fact then as to the opinions, but again, it would not concern Electronic Mobility Controls because there's been a waiver as to... You think your clients still get out? Yes, Your Honor, because there have been no addressing on the appellate end of opinions with regard to Mr. Ezra as they concern Electronic Mobility Controls specifically. And even here in the argument, the focus has always been on the installation of the brake roller system, which Electronic Mobility Controls has no part in. On the second issue as to the summary judgment motion, and Mr. Cady's actions or inactions, we would submit that the district court appropriately granted summary judgment. Now, even looking at this under a de novo standard as this court would do, it is up to Mr. Cady's counsel to present to you a genuine issue of material fact that precluded summary judgment here. And I want to submit to Your Honors that there is not one, particularly with regard to this issue of causation. That has been the focus of Mr. Cady's argument, and there is no dispute of fact as to causation, and let me tell you why. For Electronic Mobility Controls, we had two, in fact, two liability experts that addressed the causation issue. All right, tell me, you say there's no dispute as to causation. What was the cause? Well, Your Honor, according to defense experts, and this is undisputed again, Mr. Neuza, who is a 25-year employee of Electronic Mobility Controls, was one of the experts, very experienced in the system, and he testified that it was Mr. Cady's lack of training, lack of knowledge, lack of experience, and his use of this product in mixed mode, which led to him losing control and the confusion and panic that caused the accident. What caused them to hit the tree? What caused the van to hit the tree? The fact that he was driving the car without being experienced, without training, getting in the car in the first place when it wasn't working properly caused the accident. He didn't know how to stop it. He shouldn't have gotten in the car in the first place. If he had not gotten in the car, which he would know. Because he didn't know how to stop it. Because he didn't know how to use the controls correctly. I mean, that's the claim. Essentially, yes. And what's important here is that is undisputed testimony, and why is it undisputed? The district judge never said that. I'm sorry? I had trouble figuring out what the district judge said was the cause. I have trouble figuring out what the experts say is the cause, and I have trouble understanding what you say is the cause. You say lack of training. Lack of training. He hit a tree. The car hit the tree. We know that, but why did he hit the tree? It doesn't matter why he hit the tree. It doesn't matter why he hit the tree. For the purposes of the defense experts. It doesn't matter why he hit the tree. For the defense experts, Mr. Katie's action of getting into the car. But the injuries were caused by the car hitting the tree. Correct. But those injuries would not have been caused if he'd never gotten in the car, which he was never supposed to do because he never had the training. It wouldn't have gotten up that morning if it wouldn't have hit the tree either. Right. So this evidence is undisputed because Mr. Ezra, their only liability expert, decided to disregard that evidence. The evidence may be undisputed that he lacked training, that he put the car and van in mixed mode and all of that. Yes, Your Honor. How does your expert link that as the cause of the accident? They weren't in the car, so how could they possibly know? Well, Your Honor, that's simple. And it's the fact that he got into the car. The fact that he gets into the car. Let me step back a moment to answer your question. Let me get into some of the issues that he did not do. His training. He was required to have training by a rehabilitation specialist. He was required to read any of the instructions, which all contained warnings about not to use this car in mixed mode, not to use the car if any of the controls didn't work, not to use the car if the pin wasn't installed. So all of those issues, his failure to read the instructions, his failure to be properly trained, which, again, includes reading the instructions, all of that was linked by the defense experts, and the testimony would be that Mr. Neuza said that if he was properly trained, that is, he knew what the warnings were, he knew that he wasn't supposed to use it in mixed mode, he knew that he wasn't supposed to even get into the car that day because the controls weren't working. He had known that the collision would not have occurred because he would have known he was not supposed to drive it. So really it was getting in the car. It was getting in the car based on these other issues, that he had no experience in the car. He didn't know how to use the controls. He was using it in an unauthorized mode, which was the mixed mode. And so both experts agree that the lack of training, inexperience, unauthorized use led to confusion and panic, which made it so that he could not control the van. That was from Mr. Neuza. Although it sounds like back in law school, they talked about res ipsa loquitur. That's your argument. Res ipsa loquitur. I think the thing speaks for itself. Is that what you're trying to say? Maybe essentially not a legal argument, but essentially maybe that's the logistic, how it follows. But I will say, Your Honor, that under the defense standard for causation, whatever caused the accident, this does not have to be a single cause of the accident. There could be multiple causes. And in order to bar his recovery, this only needs to be a cause. And I think that is established. Approximate cause. Correct. Approximate cause. And that is established by Mr. Neuza and Mr. Peters, where Mr. Ezra, their only liability expert, says it's irrelevant to my analysis. I'm not going to consider it. And therefore the only testimony that we have on the causation issue, on this particular causation issue, comes from Mr. Neuza and Mr. Peters. I mean, taking to its logical extreme, Mr. Ezra's opinion would be no matter who was driving the car, this accident happens exactly the same way. Correct. And your argument is, to the contrary, someone who was properly trained, who read the warnings, who knew how to work the thing, this accident would not have happened. That is correct. That is correct. Either because they didn't get in the car in the first place or because they would have been able to stop the car before it hit the tree. Well, honestly, I mean, the warnings say don't drive the car if the controls aren't working. So that's just something you're not supposed to do. So with proper training, you would assume they wouldn't actually get into the car. But I do want to focus on this. I want to ask you this. I know you don't think that they have enough evidence regarding the malfunction of the mechanical arm brake roller, but if they did, it would be a different case, right? Or would it be? You seem to be arguing that if they could show evidence that what happened here was that the brake roller was defective, the fact that he got in the car without training, he put it in mixed mode, he's still out of court because of all those other things. Well, that's correct, Ernie. It would be a complete bar to recovery under the negligence claims. The assumption of the risk would bar his recovery, and his misuse of the product would also bar his recovery, irrelevant to whether Mr. Ezra's opinions actually end up coming in. And that last piece is based on the warning? Correct. The misuse? Correct. The misuse meaning that he was unable to convert the vehicle. And the court did, in fact, take this decision based on not just the issue of his inability to put in the safety pin, but, and I can cite to the record, the court's opinion considers all of these issues, not just the safety pin. The court considers that Mr. Cady knew the vehicle was not operating properly. He knew he was doing something he was not supposed to do that was not normal for this vehicle, which was evidenced by the fact that he drives it around the parking lot. He knew he had never operated the vehicle before. He had never been properly trained as required by the manufacturer. He had not read the instructions, so he had not reviewed any of the warnings that come with the product that tell you how to use it and how not to use it. And the court cited to all of those things, and I'm happy to give, Your Honor, page numbers or line numbers if you so choose. But all of those issues are cited, so it's not simply an issue of just the replacement of the safety pin. It's not that narrow. It's very broad. The court's decision is the series of bad actions and decisions by Mr. Cady, which ultimately led to the collision. And the causation testimony that is undisputed establishes that Mr. Cady's actions and lack thereof were a contributing cause to his injuries. Thank you, Your Honor. Thank you very much. I appreciate it. Mr. Stapleton. Your Honors. May it please the Court. My name is Brian Stapleton, and I'm here on behalf of Brideway. It's my pleasure to be here. Thank you. Justice Diaz, if I may, I want to... Oh, you've promoted me. Judge Diaz, I never thought it was harmful to be too respectful. I want to follow up the question you just asked, which is if they had evidence that the brake roller was malfunctioning, wouldn't this be a different story? They don't have evidence that the brake roller was malfunctioning. In fact, there is overwhelming evidence that it was functioning properly. And where Mr. Ezra, who has many flaws, goes terribly wrong and violates Dauber and Rule 702, is that he blinks at this overwhelming evidence. He has no answer for it. And his theory about why the brake roller pad disengaged is absolutely made of whole cloth. The most compelling fact that Mr. Ezra cannot account for and refuses to account for is the presence of white residue on the brake roller pad. So if I may, Judge, the roller arm has a white plastic wheel at its end. And as the servomotor moves the roller arm up and down on the brake pad, it leaves a residue because the brake pad itself is ionized steel and the white roller is plastic. Steel beats plastic. As the roller arm goes up and down over thousands and countless strokes of the servomotor movement, it leaves an ingrained white residue. And in this case, there were numerous photographs, and they're in the record, showing the presence of that residue ingrained in the brake pad. It couldn't be worn off, so deeply ingrained in perfect width of the plastic roller wheel itself. And this is compelling evidence that shows that the brake roller arm was properly installed over the life of its use until the night of this accident. Now, Mr. Ezra, in order to survive a motion to strike, is required to account for other facts that may dispute his theory. The scientific method demands that he do so, but he did not do so in this case. Was he asked about this, the existence of the residue? Yes, he was. What did he say? He never tested it. He didn't know what it was. He essentially ignored it. I spent two wonderful days with Mr. Ezra in depositions. It was very, very eventful. And he simply had no answer for the plastic residue. He also concocted a theory that somehow, based on reading the input output data, which led him to conclude that the brake roller arm had migrated. Now, that in itself is nonsense. The data in the AVID black box measures an input coming into the servo from the drive module. Before you get to your explanation, didn't your own expert suggest that it was a possibility that this kind of migration could occur because of the flexing of the vehicle? Well, they said that flex occurs and that it's possible for the brake roller arm to move. But they did not agree or concede that it could move to the extent of moving, say, a half an inch to the left, down, underneath the brake pad, and then back to the right. Now, vans flex. Vehicles do flex. The amount of flex is minimal. The problem with Mr. Ezra's testimony in this regard is that he didn't measure any kind of flex or road load or road force. In fact, he never visited the scene of the accident. He had no idea what the roads around the accident scene looked like. The bigger problem for Mr. Ezra is that over the course of three inspections of this van, conducted over 24 months, that brake roller arm was never seen underneath the brake pad. Now, Mr. Ezra has this theory, a rather astounding theory, that this brake roller arm migrated to the left, then it migrated down, then it migrated right, and that blocked the brake from stopping the vehicle. The problem is when we inspected the van, the brake roller arm was above the brake pad. Facts are facts, and facts are hard to change. The other problem with Mr. Ezra's theory, and it's completely unsupported, is that the input-output data does not show any kind of migration of the brake roller arm. All the input-output data shows the module gives a signal to the servo. The servo receives a signal, and the brake roller arm moves a certain degree. The data shows the transmission of the signal from the module to the servo. Data also captures the range of motion of the brake roller arm. That's all it does. For Mr. Ezra to somehow conclude that the brake pad is disconnected from the roller roller arm is utterly baseless. There is no factual foundation for that conclusion. Mr. Ezra also admits that he has no idea what the brake roller pad looked like at the time of installation. So remember, Your Honors, the standard here is was this brake roller arm defective not at the time of the accident, but when it left the control of right-of-way. That's the product liability standard. Mr. Ezra has no idea what the brake roller arm looked like. And this is contradicted. His notion that this was improperly installed is contradicted by the right-of-way witnesses and the documentation showing that the entire system was properly installed. There's paperwork showing it was properly installed. The system was road tested for 200 miles by two individuals who verified that it was properly installed, and the van worked for years. How old was the van or the installation? Your Honor, I apologize. That's okay. It was several years. It was several years. And it happened to fail. I thought it was a 2007 van and the accident was in 2010. Am I right? I believe Judge King that that is correct. So this malfunction, this improper installation, happened to manifest itself the night that an untrained individual decided to get into it when he knew it was broken, he had other options for getting home, he concocted a very dangerous and reckless mixed-motive operation. His actions acknowledged that this was dangerous because he took it for a test run around the driveway, the parking lot. Now why would he do that if he felt it was safe? So against the overwhelming evidence of the operator's negligence, Mr. Ezra concocts a theory that, oh, this data somehow supports my idea, but it doesn't support his idea. And importantly, Mr. Ezra's theories contradict what the plaintiff himself has to say about all of this. Now the plaintiff said as he's driving down the road, the entire system shuts down, that it goes dead. There's power to the van, but the AVID system isn't working. And I believe that was manufactured in some way to try and show that the system malfunctioned. Mr. Ezra says no such thing. Mr. Ezra says, and the data shows, the AVID system was working fine up until the point of impact. The servos were receiving calls, responding. The van was operating as it normally would. The steering was working. So I don't think Mr. Ezra's allowed to come in and manufacture a theory that contradicts the facts that his own client would establish. And I believe that this weighed very heavily in the judge's decision to strike Mr. Ezra because his theories are speculative, they're unsupported, they're untested, and they're untestable. And nowhere, I was at the argument. My friend across the aisle was not. I observed the judge when he gave his opinion. I didn't hear him say he didn't like Mr. Ezra's conclusions. He simply didn't write that. He didn't say that from the bench. And the transcript doesn't support that. If your honors have any questions, I'm happy to answer them. Other than that, I've said enough. Thank you. Thank you, Mr. Paperman. Mr. Chalker. Thank you, Your Honor. I'll do my best to be briefer. I have three quick points. Number one, starting with where Defense Affiliate Council left off, the issue of Mr. Ezra's opinions, that's credibility, not admissibility. They've raised the issue of the white roller. Now, Mr. Ezra did comment on it, but at the end of the day, he does not have to, as an expert, endorse the defendant's theory of the case. He merely has to satisfy the federal rules. Their own experts, credibility, not admissibility. Mr. Klandenin reviewed next to nothing, photographs, an expert designation, and stood by at an inspection. He's admissible. Mr. Nunza also didn't go to the crash accident site, never inspected the vehicle. Credibility, not admissibility. Mr. Peters, he also didn't go to the crash site. Credibility, not admissibility. Mr. Ezra has satisfied the letter of the law. If the defendants wish at trial to make a closing argument to this point, they're certainly entitled to, and perhaps it will be compelling. But it is not an issue of admissibility. Regarding the waiver of the appeal as it relates to EMC, it's not been waived. All of the issues raised in EMC's motion for summary judgment were addressed. That's the record beginning on 4-11 going through 4-16. They have raised four issues in their motion for summary judgment. All but three were addressed in the brief. The one that wasn't addressed, whether Mr. Ezra's opinion regarding the installation instructions, specifically the instructions, that was not addressed because the court didn't rule on it. So there was no basis to appeal from. So every issue that the court ruled on relative to EMC was specifically addressed in the brief and was addressed here in argument. Finally, this issue of a genuine dispute of material fact, I think it bears significantly on the resolution of this case to not only recognize that there is, as the court passionately heard, a drastic dispute between the defense theory and opinion on causation and the plaintiff's theory and opinion on causation. What I don't think really has been brought to such clear light are the dramatic inconsistencies in defendant's case in and of itself. Mr. Nunza says, I know what caused the crash. He was stepping on the brake and the accelerator at the same time. Mr. Peters says, that didn't happen. Mr. Nunza says, I know what caused the crash. He panicked. Mr. Peters says, there's no way to say that that happened. The data logger, Peters, agrees with Mr. Ezra, doesn't agree with Mr. Clendenin or Mr. Nunza. There are so many inconsistencies weaved throughout this case that, in the light most favorable to the plaintiff, the motion should have been denied. Thank you all. Thank you, Mr. Chauffeur. We'll come down and greet counsel, and then we'll return to the bench and talk to the students. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Albert Diaz, Andre M. Davis